## CORRIGAN *vs.* KIERNAN.

*In the matter of the Guardianship of* ANN KIERNAN, *a minor.*

THE Testator directed by his will as follows : " And for the better bringing up and taking care of my said children, who are minors, at the time of my decease, I give and dispose of the care and custody of them to my said wife, as long as she shall remain my widow, for such time as they shall continue minors, or under the age of twenty-one years, she to be guided by the advice of my said executors as to the education of my said children ; my said wife and my said executors to manage, educate, and bring up my said children in the manner they may deem most conducive to their welfare."— Held that the wife was constituted the sole testamentary guardian, and she having married again, and thereby avoided or terminated her guardianship ; that it was competent for the Surrogate to appoint a guardian under the provisions of the statute.

A clearly manifested intention in one part of a will ought not to yield to a provision of doubtful meaning ; and technical terms are presumed to have been employed by the testator in their legal sense, unless the context plainly controls them.

A female infant of tender years should, if possible, be left under maternal care and influence, and in the appointment of a guardian, this circumstance will have an important influence in the selection.

JOHN T. DOYLE, *for Petitioner.*
T. JAMES GLOVER, *for Executors.*

THE SURROGATE.    Helena Corrigan, the mother of Mary Ann Kiernan, a minor, aged six years, applies for

the appointment of her husband, James Corrigan, as guardian of her child.

John Kiernan, the late husband of the petitioner, by his last will and testament, made the following provision in respect to the care and management of the minor : " And for the better bringing up and taking care of my said children, who are minors at the time of my decease, I give and dispose of the care and custody of them to my said wife, as long as she shall remain my widow, for such time as they shall continue minors, or under the age of twenty-one years, she to be guided by the advice of my said executors as to the education of my said children ; my said wife and my said executors to manage, educate, and bring up my said children in the manner they may deem most conducive to their welfare, it being my desire and intention, that my said wife during her natural life, or as long as she shall continue my widow and unmarried, should have a home and comfortable support out of my said property, with my said children."

It is contended by the executors, that this clause of the will properly interpreted, constitutes them, together with the wife of the deceased, guardians of the infant, and that the widow having married, and thereby avoided or terminated her guardianship, the executors still remain testamentary guardians, so as to prevent any appointment under the statute.

The words employed in our statute in relation to the power of a father to appoint a testamentary guardian, give him authority to " dispose of the custody and tuition" of his children (2 *R. S., p.* 209, § 1, 3*d ed.*), and it is declared that " every such disposition, from the time it shall take effect, shall vest in the person or persons to whom it shall be made, all the rights and powers, and subject him or them to all the duties and obligations of a guardian of such minor, and shall be valid and effectual against every other person claiming the custody or tuition of such minor, as guardian in Socage or otherwise" (*Ibid.*, § 2) ; and again,

" any person to whom the custody of any minor is so disposed of, may take the custody and tuition of such minor," &c. (*Id.*, *p.* 210); and " take the custody and management" of his personal estate, and " the profits of his real estate during the time for which such disposition shall have been made."

The language of the testator, when he says, " I give and dispose of the care and *custody*" of my children to my wife, conforms as nearly to the phraseology of the statute as might ordinarily be expected. It constitutes a very clear " disposition of the custody" of the infant during minority, and if the will had stopped there, no room for doubt could have existed. The widow would have been the sole testamentary guardian. It is a sound principle of construction, that a clearly manifested intention in any part of a will, ought not to give place to a provision of doubtful or ambiguous meaning. An express and positive devise cannot be controlled by subsequent words of uncertain import; the latter prevail only where they are absolutely irreconcilable with the former. (2 *Jarman*, 742.) Again, where the testator uses technical terms, he is presumed to employ them in a legal sense, unless the context plainly indicates the contrary. (*Ibid.*, 744.)

The first statute that gave a father the power of appointing a guardian (that of 4 *& 5, P & M., c.* 8), termed it a grant of " the order, keeping, education and governance" of the infant. Our statute follows that of 12 *Car.*, 2, *c.* 24, § 8, which authorized the father, whether of full age or not, to " dispose of the custody and tuition" of his infant children. I do not suppose that it is necessary for a valid testamentary appointment under either act, that the precise statutory phrase should be employed. The intention of the testator as gathered from the whole will, however inartificially expressed, will govern in this as well as in any other branch of testamentary provisions. Thus a request by the testator in his will to M., " to take upon herself the management and care of his house and children," has been held in the

absence of any other direction, to constitute M. the testamentary guardian. (*Miller* vs. *Harris*, 9 *Jurist*, 388.) But such a construction cannot possibly obtain in the face of an express appointment in some other part of the will, of another person as guardian. In *Hare* vs. *Hare*, 5 *Beavan*, 629, the appointment of a guardian *eo nomine* in a will, was held not to be revoked by a codicil, giving " the care, charge, and education" to another ; and in *Ex Parte Park*, 8 *Jurist*, *Part I.*, 372, the appointment of certain executors and trustees as guardians, was held not to be revoked, by the revocation of their appointment as executors and trustees.

It has been decided that a direction of the testator, that C., his executor, "should have the education" of his son, did not constitute C. guardian (*Cro. Elis.*, 678, 734); nor a trust for " maintenance and education." (*Vaugh.*, 184.) Swinborne, on the authority of the civil law, lays down the proposition, that "tuition" is the larger word, and more comprehensive than " custody" (*Swinb. Pt.*, 3, § 12 ; *Storke* vs. *Storke*, 3 *P. Wms.*, 51) ; but admits that a devise to one "to take care of," or " to have the custody of " the testator's children, is even under the civil law, and independent of the statute, sufficient to constitute a guardian, in the absence of other terms. A devise that the son should be under " the care and direction" of A. & B, has also been held good to constitute a testamentary guardian (*Bridges* vs. *Hales, Mosely*, 108) ; also a direction for the maintenance of C., whilst " the children should live with her" (*Mendes* vs. *Mendes*, 3 *Atkyn.*, 624), has been thought sufficient. · It has been doubted in the latter case, whether a devise of " custody" generally was sufficient, on the ground that no limitation of time during minority was fixed. (*Bingham on Infancy*, 141.)

If we examine with the light afforded by these decisions, the will now under consideration, there can be little if any difficulty in the solution of the question. The testator says, " for the better bringing up and taking care of

my said children who are minors at the time of my decease, I give and dispose of the care and custody of them to my said wife, as long as she shall remain my widow, for such time as they shall continue minors." This is precise and definite. It limits the charge to minority, and though omitting the word " tuition," yet in the statement of the inducement, " the better bringing up and taking care" of the children, and in the paragraph immediately ensuing, requiring the wife " to be guided by the advice" of his executors as to their " education," it implies as clearly as possible, that the tuition is to be under the immediate direction of the wife. This makes a manifest and complete disposition of the guardianship. The design doubtless was, in the matter of education, to subject the guardian to an advisory control of the executors, a direction which, if not complied with, could be enforced in equity (1 *P. Wms.,* 705, 2 *Vesey, sen.,* 56, 57), but which by no means made them joint guardians. The remaining portion of the same clause fairly requires a similar construction. Having said his wife in the *education* of her wards should be guided by the *advice* of the executors, he concludes by the words, " my said wife and my said executors to manage, educate, and bring up my said children in the manner they may deem most conducive to their welfare ;" thus extending the advisory powers of the executors to the manner or *mode* of their general rearing, but still leaving the custody and care where he had first placed it.

I must hold, therefore, that the testator did not make the executors jointly with his wife guardians of this infant, but that, on the contrary, she was constituted by his will sole guardian. Having married again, her guardianship ceased, and there being no testamentary guardian, it is competent for me now to proceed and make an appointment under the statute.

The child being a female of tender years, it is proper she should be left as nearly as possible under maternal influence and care, and there seems no objection to the ap-

pointment of her stepfather as guardian. The trust reposed in the executors of directing the manner of her education and management, will remain unaffected, and can still be enforced; and in case of any misconduct, the guardian may be removed.